O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| MARIA CORRALES, <br><br> Plaintiff, <br><br> v. <br><br> MORENO VALLEY UNIFIED SCHOOL DISTRICT, <br><br> Defendant. | Case No. EDCV-08-00040-SGL (OPx) <br><br> ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

Presently before the Court is defendant's motion to dismiss, plaintiff's opposition, and defendant's reply thereto. For the reasons set forth below, defendant's motion is **DENIED**.

## I. FACTUAL BACKGROUND[1]

From 2003 to 2005 Maria Corrales was enrolled in an intern program at California State University at San Bernardino that enabled her to earn a California special education teaching credential. As part of this intern program, Corrales taught special education classes at Moreno Valley Unified School District on a full-time basis, first at Sunny Mead

---

[1] As the present motion is one brought under Federal Rule of Civil Procedure 12(b)(6), the Court, for purposes of resolving said motion, assumes as true the well-pleaded factual allegations in plaintiff's complaint.

Elementary School from 2003 to 2004, then at Edgemont Elementary School during the 2004-2005 school year, and finally at Armada Elementary. Later in 2006, Corrales earned her special education teaching credential.

While teaching at Armada Elementary and going forward, Corrales alleges that she observed that the school district was "not complying with the Individuals with Disabilities Education Act" as well as certain state law requirements for students with disabilities. Corrales also alleges that she observed that the school district was discriminating against Hispanic students. Corrales spoke out about her concerns to the school's principal and "began a pattern of advocating for . . . her students [and] encouraged the parents of her children to advocate for them as well." (Compl. ¶ 13 ("Plaintiff began to persistently voice her concerns to her supervisors at Armada Elementary School and her supervisors at the District level")).

In response the school district allegedly first ignored Corrales' complaints, and then refused to support her in carrying out her educational duties such as disciplining students, which ultimately culminated in what Corrales' alleges as the development of a hostile work environment. Finally, in February, 2007, the school district informed Corrales that it would not renew her teaching contract for the 2007-2008 school year. When asked for a reason for the decision, the school district responded that it did not need to give one under state law as the dismissal was for "no cause." The school district then asked Corrales to sign a resignation letter, and when she refused the district informed her that her failure to do so would result in the district withholding any references or recommendations for her. As succinctly stated in her complaint, Corrales believes "that the motivating factor for [the district's] non-re-elect of [Corrales'] teaching contract for the 2007 to 2008 school year was retaliation for [her] advocacy on behalf of her disabled students and her students that were [Hispanic]."

To that end, she filed a complaint against the school district for violations of California Labor Code § 1102.5 due to "a series of adverse employment actions and retaliatory acts . . . that culminated in [the] decision to non-re-elect plaintiff's teaching

contract," for violation of section 504 to the Rehabilitation Act and a regulation promulgated thereunder (34 C.F.R. §10 4.6) again for the "intentional retaliat[ion]" due to Corrales' advocacy and making "continual complaints" about the treatment of her "disabled students", and for violation of Title VII to the 1964 Civil Rights Act and a regulation promulgated thereunder (34 C.F.R. § 107(e)) again due to "retaliatory acts" taken by the district for Corrales' speaking out against the discrimination of Hispanic students by the district.

A.      Rehabilitation Act Claim

Counsel for the school district argues that Corrales' federal claims lack merit because she has not proven that she was disabled. As stated in its motion to dismiss:

> To make a claim under the Rehabilitation Act, an individual must meet certain statutory definitions, such as the plaintiff has a physical or mental impairment which impairs or substantially limits major life activities. To state a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that he or she is a person with a disability, who is otherwise qualified for employment and suffers discrimination because of said disability. In the instant action, however, there are no allegations which establish that plaintiff is a qualified individual entitled to the protections of the Rehabilitation Act. Further, there are no allegations that she was denied direct benefits from a federally financially assisted program. Thus, plaintiff cannot state a cause of action for violations of the Rehabilitation Act.

(Mot. Dismiss at 9). The notion that Corrales must prove that she herself is disabled to bring a retaliation claim for speaking out against discrimination against disabled individuals is not borne out in the case law.

At the outset it must be pointed out that Corrales is <u>not</u> suing on the basis that she was discriminated against due to a disability she had; rather, her claim is that she was retaliated against by the school district for speaking out against disability discrimination done to her <u>students</u> by the district. It is this retaliation that forms the gravamen of her Rehabilitation claim, not whether her students were in fact discriminated against due to their disability. Such a retaliation claim for speaking out against discrimination done to others based on their disability is covered by the Rehabilitation Act statutory scheme.

3

Section 504(d) to the Rehabilitation Act incorporates the anti-discrimination standards set forth in Title I to the Americans with Disabilities Act, see 29 U.S.C. § 794(d) ("standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act of 1990"), amongst which is the following, that no "person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this [Act] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [Act]." 42 U.S.C. § 12203(a). In other words, the anti-retaliation provisions in the ADA have been poured into the Rehabilitation Act so as to extend the statute's protections to "any individual" who has been retaliated against because he or she opposes any act or practice made unlawful by the act. A regulation issued pursuant to section 504(a) provides that the failure to "meet individual educational needs of handicapped persons" is a violation of the Rehabilitation Act. 34 C.F.R. § 104.33(b)(1). That regulation also explains that "[i]mplementation of an Individualized Education Program developed in accordance with the Education of the Handicapped Act [the prior title of the IDEA Act] is one means of meeting the standard established in paragraph (b)(1)(I) of this section." 34 C.F.R. § 104.33(b)(2). Corrales' Rehabilitation Act claim therefore falls within the ambit of activity protected from retaliation under § 504(d); she was complaining about and advocating for her students concerning potential IDEA violations and discrimination based on her students disability in general. Accordingly, she has standing to pursue those anti-retaliatory provisions against the district.

Indeed, this position has been adopted by many courts outside this circuit who have extended protection against retaliation under the Rehabilitation Act to those who advocate on behalf of the disabled. See Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 149 (2d Cir.2002) (threat to report disabled child's mother to authorities due to her efforts to obtain home schooling for child was example of retaliatory conduct); Weber ex rel. Samuel M. v. Cranston Sch. Comm., 212 F.3d 41, 49 (1st Cir. 2000) (Congress failed to limit the

retaliation provision of the Rehabilitation Act "in apparent recognition of the fact that disabled individuals may need assistance in vindicating their rights from individuals who may have their own claim to relief under the Act");. Sturm v. Rocky Hill Bd. Education, 2005 WL 733778, *3 (D. Conn. March 29, 2005), as well as the Ninth Circuit albeit in an unpublished decision. See Sweet v. Tigard-Tualatin School Dist. #23J, 2005 WL 19531, *1 n.1 (9th Cir. Jan. 5, 2005).[2] Moreover, although the Ninth Circuit has not issued a published decision extending the retaliation provisions to school teachers of disabled students, it has done so with respect to those students parents.

Picking up on that, defense counsel argues that the only people who can sue for retaliation for speaking out against the discrimination of disabled students are the students parents. "Assuming the validity of these allegations, the parents, not plaintiff, are the proper individuals to pursue such claims." (Mot. Dismiss at 9-10). This distinction has no basis in the statute. Again the relevant standard incorporated into the Rehabilitation Act by way of Title 1 to the ADA prohibits retaliation against "any individual" who speaks out against the discrimination of the disabled. Simply put, there is no basis under the statutory language to allow parents to sue for retaliation yet bar those students' teachers from doing so as well. Again the relevant statutory language is that "any individual" who has been retaliated against for advocating for disabled students may bring a claim.

B.   Title VI Claim

Defense counsel's argument with respect to Corrales' Title VI retaliation claim fares no better. Again, counsel seems to suggest that, to prove a retaliation claim, the plaintiff

---

[2] Plaintiffs claim another published Ninth Circuit decision similarly found this to be the case, but unfortunately in that case the particular question at issue here (whether a teacher has standing to bring a retaliation claim under the Rehabilitation Act for voicing concerns that her students were being discriminated against and for IDEA violations) was addressed by the district court in that case (and then in an unpublished decision) and was not dealt squarely with on appeal before the Ninth Circuit in its published decision. See Settlegoode v. Portland Schools, 371 F.3d 503, 512 n.6 (9th Cir. 2004). It should be noted, however, that the Ninth Circuit upheld the jury's verdict for the school teacher against the district on her Rehabilitation Act retaliation claim; but again the standing issue was never raised on appeal so the upholding of the verdict does not place the Ninth Circuit's imprimatur on the lower court's decision on that point.

must prove that they themselves are a minority and any such claim is confined to being brought either by the students or their parents. (Mot. Dismiss at 11). As noted in her complaint, Corrales' Title VI claim is based on its anti-retaliation regulatory provision, which in terms of the language used is nearly identical to the one underlying Corrales' Rehabilitation Act retaliation claim:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part.

34 C.F.R. § 100.7(e). Again, the relevant regulatory language speaks of prohibiting retaliation against "any individual" for advocating on behalf of those class of individuals directly covered by Title VI. That is exactly what Corrales alleges she did and what prompted the school district to retaliate against her. The Ninth Circuit in Maynard v. City of San Jose, 37 F.3d 1396 (9th Cir. 1994) provides support for the notion that a person in Corrales' position would have standing to sue under Title VI for being retaliated against for advocating for those who have been discriminated against on the basis of their race or ethnicity:

> In a recent case in the Northern District of California, a white, male teacher alleged he had suffered retaliation for acting to protect the rights of Native American and female students. The district court determined that the plaintiff had standing under Titles VI and IX, but did not have standing under Section 1985 because he was not a member of a protected class. Insofar as the decision in Clemes suggests that Maynard would not have standing unless he were Black, we decline to follow either the court's reasoning or its interpretation of our Section 1985 precedents.

Id. at 1403-04. Interestingly, nowhere did the Ninth Circuit rebuke or otherwise reject the district court's decision in Clemes finding that the teacher did have standing to sue for retaliation under Title VI.

The one case defendant cites for the contrary principle, Murphy v. Middletown Enlarged City Sch. Dist., 525 F. Supp. 678 (S.D.N.Y. 1981), is distinguishable as the

school teacher in that case was alleging that she had been discriminated against in her employment due to <u>her</u> race, not that of her students. In that context, the district court simply and appropriately held that there is no basis for a Title VI claim predicated upon the school district's receipt of federal assistance. Title VI, much like Title IX, is devoted to prohibiting discrimination of students. The plaintiff in <u>Murphy</u> on the other hand was asserting discrimination in her employment as a teacher. The difference between that case and this one is that Corrales is asserting that she was retaliated against (which just happen to take the form of her being terminated) for advocating for the educational rights of her students under Title VI. This is the very conduct governed by Title VI's anti-retaliation provisions.

C.   <u>Exhaustion of Administrative Remedies</u>

Finally, defendant argues that Corrales did not exhaust her administrative remedies before filing suit on her state statutory claim for whistleblower retaliation under California Labor Code § 1102.5. Although section 1102.5 does not explicitly contain an exhaustion requirement, the California Supreme Court has nonetheless applied, absent a clear legislative intent to the contrary, the "settled rule requiring exhaustion of administrative remedies" before allowing a plaintiff to state a claim under section 1102.5. <u>Campbell v. Regents of the University of California</u>, 35 Cal.4th 311, 329-331, 333 (2005). A number of federal district courts have held, in light of <u>Campbell,</u> that a plaintiff must exhaust an available administrative remedy before they can file suit. <u>See</u> <u>Neveu v. City of Fresno</u>, 392 F.Supp.2d 1159, 1179-80 (E.D. Cal. 2005); <u>Romaneck v. Deutsche Asset Management,</u> 2006 WL 2385237, at * 6-7 (N.D. Cal. Aug. 17, 2006).

Defendant has read these cases to require exhaustion of remedies before the Labor Commissioner before being able to bring such a 1102.5 suit. That, however, is not the rule coming out of these cases. Rather, in each of these cases the courts have held that a plaintiff must pursue an available administrative remedy prior to filing suit; they did not state what form that administrative remedy must take. Other district courts have explicitly rejected the proposition put forward by defendant requiring that a litigant must exhaust

7

their remedies before the Labor Commissioner before bringing a Labor Code § 1102.5 claim. Those courts have found that exhaustion before the EEOC or its state counterpart is sufficient. See Paterson v. California Dept. General Servs, 2007 WL 756954, *7 & n.5 (E.D. Cal. March 8, 2007); Lund v. Leprino Foods Co., 2007 WL 1775474, * 4 (E.D. Cal. June 20, 2007).

Indeed, the court in Neveu later allowed the plaintiff to amend their complaint to assert that his administrative remedies had been exhausted by filing a government tort claim. See Neveu v. City of Fresno, 2005 WL 2562717, at *6 (E.D. Cal. Oct. 8, 2005). Here, Corrales has asserted that she filed a government tort claim before filing suit, and that her claim was rejected by the school district. (Compl. ¶¶ 22-23). In light of the subsequent decision in Neveu, the Court finds that dismissal at this stage of the proceedings is inappropriate for Corrales' section 1102.5 whistleblower claim. See id.

Accordingly, the motion to dismiss is **DENIED** in every respect.

Dated: August 29, 2008

*[signature]*

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE